[Civ. No. 22203. Fourth Dist., Div. One. Dec. 23, 1980.]

RENNE C. HAASE, Plaintiff and Appellant, v.
SAN DIEGO COMMUNITY COLLEGE DISTRICT,
Defendant and Respondent.

COUNSEL

Lynn & Walsh and Robert H. Lynn for Plaintiff and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and D. Richard Rudolf, Deputy County Counsel, for Defendant and Respondent.

OPINION

WIENER, J.—Plaintiff, Renne C. Haase, a teacher employed by defendant, San Diego Community College District (District) for approximately six years, was summarily discharged by the District on September 22, 1976. He appeals after unsuccessfully seeking a peremptory writ of mandate for reinstatement and other related relief. We affirm the judgment.

*An Overview—Concepts and*
*Principles Governing Our Review*

Entry into the Education Code is painful.[1] In an effort to minimize the discomfort for the uninitiated who have not had the dubious pleasure of treading laboriously through the statutory maze, some preliminary observations may be helpful.

Since 1850, our Legislature has been particularly active in enacting laws pertaining to education. (West's Ann. Cal. Codes, Ed. (Reorganized) art. I, Historical Note, p. 3; see also Cal. Const., art. IX, § 1.) The results flowing from this continuing legislative concern reveal an accomodation to the different, and occasionally conflicting, pressures from interested parties.

Teachers, certificated employees, are given rights through a rather complex system designed to give a degree of academic tenure in direct relation to years of employment. Additional service by a teacher imposes a limitation on the power of the institution's governing body to terminate employment. The Legislature prevents the arbitrary dismissal of certificated employees who have obtained positions of a settled and continuing nature—in the jargon of the code, "regular" or "contract" teachers (§ 13345.10 (§ 87602)) by requiring notice and hearing before termination (§ 13404; § 13443 (§ 44934; §§ 44949, 87740)). To fill its short range needs, however, a district may employ a certificated person as a temporary employee (§ 13346 (§ 87604)) who may as a general rule be dismissed at the pleasure of the district (§ 13445; § 13446

---

[1]All statutory references are to the Education Code of 1959 as it read before its recodification effective April 30, 1977. Following each statutory reference is the section of the present Education Code, enacted by Statutes 1976, chapter 1010, as amended, questionably described as the "Reorganized" Education Code. For convenience of the reader, an optimism probably unwarranted by the nature of this case, the pertinent text of each 1959 statutory reference is contained in footnotes.

(§§ 44953, 87742; § 44954)). (See generally, *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629].)

The Legislature, however, has restricted the flexibility of a school district in the continued use of temporary employees (see, e.g., § 13337.5 (§ 87482)), for otherwise the benefits resulting from employment security for teachers could be subordinated to the administrative needs of a district. (*Curtis* v. *San Mateo Junior College Dist.* (1972) 28 Cal. App.3d 161, 165 [103 Cal.Rptr. 33].) ■ Temporary classification, narrowly defined by the Legislature, must be strictly construed. (*Balen* v. *Peralta Junior College Dist., supra,* 11 Cal.3d at p. 826.) ■ The tenure law may not be circumvented by the district through techniques or practices designed to frustrate the valid expectations of reemployment established by the tenure statutes. (*Santa Barbara Federation of Teachers* v. *Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 230 [142 Cal.Rptr. 749].)

The question of classification, of crucial interest to the teacher, has quite understandably spawned considerable litigation, including the case here where plaintiff wants the increased job security which follows from a higher classification.

The confusing language of the Education Code has been of minimal illumination on the recurring question of teacher status and our courts have had many opportunities to wrestle with the meaning of those sections circumscribing a district's power to classify a certificated employee as temporary. Only recently has our Supreme Court clarified the meaning of section 13337.5 (§ 87482), holding the final paragraph of that section must be read independently from the preceding three paragraphs.[2] Now certificated employees hired after the effective date

---

[2]Section 13337.5 provided: "Notwithstanding the provisions of Section 13337, the governing board of a school district maintaining a community college may employ as a teacher in grade 13 or grade 14, for a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, or because a certificated employee has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need,

of the statute may perennially be classified as temporary, providing they teach "less than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties...." (*Peralta Federation of Teachers* v. *Peralta Community College District* (1979) 24 Cal.3d 369 [155 Cal.Rptr. 679, 595 P.2d 113]; referred to as *Peralta*.) In reaching this holding, the Supreme Court stressed the classification in section 13337.5, and related sections referred only to *initial, first*, classification and not to reclassification. (*Id.*, at pp. 381-382.) That conclusion was buttressed by the principle that since "temporary classifications are not guaranteed procedural due process by statute, they...should be strictly interpreted." (*Balen* v. *Peralta Junior College Dist., supra*, 11 Cal.3d at p. 826; *Peralta*, 24 Cal.3d at p. 381.)

*Peralta* has relevance here because most of plaintiff's efforts at trial were devoted to the typical pre-*Peralta* section 13337.5 arguments to the effect that the fourth paragraph of section 13337.5 was qualified by the preceding three paragraphs of that section, the argument which *Peralta* expressly rejected. (*Id.*, at p. 381.)

In the discussion which follows we are guided not only by the foregoing general principles gleaned from the Education Code as interpreted by our courts, but the general procedural rule that where there are no findings, the case here, "...every intendment is in favor of the judgment and it is presumed that every fact or inference essential to support the order and warranted by the evidence was found by the trial court. [Citation.]" (*California Teacher's Assn.* v. *Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556, 558 [145 Cal.Rptr. 100].) The party seeking the writ of mandate must sustain the burden of showing he is entitled to it. (*Paulus* v. *Board of Trustees* (1976) 64 Cal.App.3d 59, 63 [134 Cal.Rptr. 220].)

---

as determined by the governing board.

"Such employment may be pursuant to contract fixing a salary for the entire semester or quarter.

"No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years.

"Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446."

*Facts*

The District employed Haase as a part-time temporary certificated employee for the school years 1970-1971, and 1971-1972. Haase was employed again for the school year 1972-1973, as a part-time temporary hourly employee working approximately 38 percent of a full-time teacher until he was assigned on February 26, 1973, to the federally funded Land Predischarge Education Program (PREP).[3] His position was in a categorically funded program subject to the provisions of section 13329 (§ 87470).

He worked in PREP for the balance of the school year 1973-1974, and the entire school year 1974-1975, without a written contract. However, for the two succeeding years, 1975-1976, and 1976-1977, the parties signed written agreements entitled "Certificated Employment Agreement for Instructors in Categorically Funded Projects Pursuant to Education Code Section 13329."

On September 22, 1976, Haase's supervisor told Haase he was violating the contract because of alleged unexcused absences from work and warned he would be terminated if the violations were to continue. Haase, ignoring the warning, was fired on September 24, 1976.

The federal government terminated PREP on December 17, 1976. If Haase had not been discharged he would have earned an additional $4,698.96 in wages.

*Section 13334 Does Not Apply to Plaintiff.*
*The Issue Here Is Reclassification*
*Not Initial Classification*

■ Haase's first argument is pegged to section 13334 (§ 87476).[4] He says since the District did not classify him on February 26, 1973, as

---

[3]For those with insatiable curiosity, the PREP program appears to have been a program permitting the teaching of a wide variety of academic subjects to military personnel. During the relevant period here, Haase was teaching at the Naval Air Station at Miramar.

[4]Section 13334 provided: "Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees."

either a regular or a temporary employee, he became a contract employee. He overlooks, however, the impact of the underlying judgment and *Peralta* on this record. We may not be so cavalier.

Plaintiff does not raise any issue relating to the propriety of his first classification in 1970 as a temporary employee, and concedes the court ruled correctly in rejecting his pre-*Peralta* argument before his assignment to PREP. Since he does not challenge either his initial classification or his judicially *Peralta* determined classification, we are faced with a judgment which leaves open only the question of reclassification in 1973. As previously stated, however, *Peralta* in discussing this issue expressly held section 13334 deals "not with reclassification but with initial classification." (*Peralta*, 24 Cal.3d at p. 382.) Accordingly, we must reject his argument.[5]

*Plaintiff Is Not Entitled To A Higher Classification*
*Under Section 13335 (§ 87477)*

██ ██ Haase also argues that when he started to work full-time in PREP he secured a distinctly separate status requiring reclassification at that time or the following July (1973 or 1974) pursuant to section 13335 (§ 87477).[6] He asserts he was unaware of his temporary status in PREP until receipt of the written contract in September 1975. He further claims temporary status under section 13329 (§ 87470) is prohibited, legally impossible, because the statutory scheme permits the hiring of temporary certificated employees only under sections 13336 (§§ 44917, 87478); 13337 (44919, 87480); 13337.3 (44920, 87481); or 13337.5 (87482). Accordingly, since he was not hired under any one of these last four sections, he must be a contract employee.

---

[5]*Hart Federation of Teachers* v. *William S. Hart Union High Sch. Dist.* (1977) 73 Cal.App.3d 211, 213-216 [141 Cal.Rptr. 817], is in factual accord since the teachers hired there under section 13329 (§ 87470) were *never* classified and consequently attained probationary status pursuant to section 13334.

[6]Section 13335 provided: "The classification shall be made at the time of employment and thereafter in the month of July of each school year. At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status."

We first respond to his last point.

*Section 13329 Applies to Temporary Employees and*
*Authorizes Their Employment Within Categorically*
*Funded Programs*

On February 26, 1973, when defendant started in PREP, section 13329 provided: "*Service* by a person as an instructor *in classes conducted under contract* with public or private agencies *shall not be included in computing* the service required as a prerequisite to *attainment of, or eligibility to, classification as a permanent employee* of a school district.

"*This section shall not* be construed to *apply to any* regularly credentialed *teacher* who has been *employed to teach in the regular* educational *programs* of the school district *as a probationary employee before being subsequently assigned to* any one of *these programs.*" (Italics added.) (Stats. 1970, ch. 697.)

As noted previously, before his assignment to PREP, Haase was not employed as a probationary, contract, employee in the regular school program. Accordingly, the exception in the second paragraph does not apply to him.

An historical peek at the Education Code is of some assistance. After the code was amended effective September 1, 1972, to provide separately for community college instructors (Stats. 1971, ch. 1654), section 13346 provided "[t]he governing board of a district shall employ each certificated person as one of the following: contract employee, regular employee, or temporary employee." Section 13346.40, effective from September 1, 1972, until September 1, 1974, said: "The governing board of a school district may employ *temporary employees pursuant to Section 13329* and 13337.5." (Italics added.) (Stats. 1972, ch. 879, § 2.) Thus, until September of 1974, section 13346.40 expressly authorized Haase's employment under section 13329 as a temporary employee. Even after section 13346.40 was repealed by its own direction, there is nothing in later legislation suggesting a different intent. Our interpretation finds further support from the language of section 13329 itself.[7] The last paragraph of that section declares that sec-

[7]Section 13329, as amended in 1973, effective January 1, 1974 (Stats. 1973, ch. 399) provided: "The governing board of any school district may employ persons possessing an appropriate credential as instructors in classes conducted under contract with public

tion 13329 does not apply to any probationary, contract (§ 13345.10) employee within regular education programs in the District before assignment to a categorically funded program. A fortiori, it does not apply to regular, permanent, employees. Logically it must apply to temporary employees. This conclusion is further strengthened by the language of the enactment giving credit toward tenure for service under the section for "at least 75% of the number of days in regular schools of the district by which he is employed are maintained" where such person is later employed as a contract employee. Language relating to credit if one eventually becomes a contract employee is superfluous if one has already reached that status. Again, logically, the language only makes sense if the section is interpreted applying to persons working as temporary employees.

Our construction is also consistent with the underlying purpose of the section which prevents "a person from acquiring probationary status solely through teaching in a categorically funded program. This permits the hiring of qualified persons for categorically funded programs of undetermined duration without incurring responsibility to grant tenured status based on such teaching services alone." (*Winslow* v. *San Diego Community College Dist.* (1979) 97 Cal.App.3d 30, 38 [158 Cal.Rptr. 509].) The section was thus intended to provide a district with ". . . flexibility in the operation of special educational programs to supplement their regular program and to relieve them from having a surplus of probationary or permanent teachers when project funds are terminated or cut back." (*Kamin* v. *Governing Board* (1977) 72 Cal. App.3d 1014, 1018 [139 Cal.Rptr. 853]; see also *American Federation of Teachers* v. *Board of Education* (1977) 77 Cal.App.3d 100, 105 [143 Cal.Rptr. 264].)

---

or private agencies, or other categorically funded projects of indeterminate duration. The terms and conditions under which such persons are employed shall be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing. Service pursuant to this section shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district unless (1) such person has served pursuant to this section, for at least 75 percent of the number of days the regular schools of the district by which he is employed are maintained, and (2) such person is subsequently employed as a probationary employee in a position requiring certification qualifications. Such persons may be employed for periods which are less than a full school year and may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees.

"This section shall not be construed to apply to any regularly credentialed teacher who has been employed to teach in the regular educational programs of the school district as a probationary employee before being subsequently assigned to any one of these programs."

We hold for the period involved here the District was authorized (under § 13329) to hire plaintiff as a temporary employee.

*Section 13335 Fails to Set Forth the Consequences
of the District's Failure to Annually Reclassify
a Temporary Teacher*

The crux of plaintiff's section 13335 argument is the formula which he reads into that section. His equation is: Inadequate written statement of temporary classification (or failure to receive a written statement) equals contract employee.

Section 13334 applies only to initial classification. (*Peralta*, 24 Cal.3d at p. 382.) Section 13335 supplements section 13334 by providing the employee must first be classified when he is hired and "thereafter in the month of July...." We conclude, for the reasons detailed in the footnote below,[8] the last sentence of the section upon which plaintiff rests his case refers to *initial* classification only. Since we are not dealing here with initial classification, plaintiff is not benefited by the last sentence of that section. ■ Thus, we have another puzzle—the consequences for the failure of the District to comply with the requirement of mandatory annual classification.

It would have been simple for the Legislature to have expressly said the failure to reclassify a temporary certificated employee results in that person becoming a contract employee. We conclude legislative silence in this statutory labyrinth, remarkable for its attention to minutia, connotes the Legislature's intent not to provide for a rigid, mechanically applied sanction. To the contrary, we believe the Legislature intended the appropriate administrative tribunal or court to fashion a fair and just remedy suitable to the individual circumstances of the particular case, based upon the establishment of prejudice from the failure

[8]Section 13335 supplements section 13334 by providing for the time of classification to be at the time of employment and then annually in July. The second sentence of the provision pertains solely to newly appointed personnel who must receive a written statement establishing employment status and salary. The following sentence provides that if the person is hired as a temporary employee, "*the* written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed." (Italics added.) The final sentence correlates with section 13334 providing: "If a written statement does not indicate the temporary nature of the employment, the certificated employee shall be deemed to be a probationary employee of the school district, unless employed with permanent status." The written statement referred to throughout the provision is one required upon initial hiring and classification.

to receive a written statement of reclassification and the balancing of the respective interests of the parties as reflected in the purposes of the statutory scheme.[9] Accordingly, we conclude under the circumstances here, including the fact that for Haase's last two years of employment he received written contracts, he is not entitled to reclassification as a more tenured employee. He has not shown any subterfuge or any attempt by the District to frustrate the purposes of the statutes. This record is also barren of any fact suggesting his suffering of any prejudice arising from the District's failure to furnish him the written statements of classification for his midyears of employment (1973-1975) during his six years with the District.

*The Consequences of a District's Noncompliance*
*With the Writing Requirement in Section 13329 Are*
*Based Upon the Facts of the Particular Case*

■ Haase finally argues that even if he were properly classified as a temporary employee on February 26, 1973, he nevertheless attained contract status no later than the beginning of the 1974-1975 academic year. His argument here, tied to section 13329, is: Since he was employed in a categorically funded project of indeterminate duration after February 26, 1973, section 13329 prevents him from including such employment in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a regular employee only if he were properly employed under that section. The section provides, "The terms and conditions under which such persons are employed *shall* be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing." (Italics added.) "Shall" is mandatory. (§ 75.) Since the provision in controversy was added to section 13329, effective January 1, 1974, he was properly employed under the provision of that section for the academic year 1973-1974. However, since he did not have a written agreement for the school year 1974-1975, he was not properly employed under that section for that academic year and thus became a contract employee.

---

[9]The purposes behind the tenure law are to provide employment security to teachers within positions of a settled and continuing nature, to protect the community from ineffective teachers, and to protect the community from the financial burden of retaining former temporary employees following the cessation of the short term needs of the district which required their employment. (See *Balen* v. *Peralta Junior College Dist.,* *supra,* 11 Cal.3d at p. 826; *Santa Barbara Federation of Teachers* v. *Santa Barbara High Sch. Dist., supra,* 76 Cal.App.3d at p. 230.)

He also says the section did not apply to him when he received the written contract for the 1975-1976 academic year because it provides, "This section shall not...apply to any regularly credentialed teacher who has been employed to teach in the regular educational programs of the school district as a probationary employee before being subsequently assigned to any one of these programs."

The conclusion of his argument relying upon the final paragraph of section 13329 is totally devoid of merit, because that paragraph applies only to any regular, credentialed person who is a probationary employee in the *regular* educational program before assignment to the categorically funded program. Haase concedes he was a temporary employee before entry into PREP.

We also query how he can attain contract status from the failure of the District to comply with the statute authorizing his employment as a temporary employee in a categorically funded program. Thus, with somewhat of a deja vu feeling, the question again is what are the consequences for the District's failure to comply with the writing requirement of section 13329. Is a full-time temporary employee reassigned to a categorically funded program pursuant to section 13329 without a written agreement, taken out of the application of the statute by operation of law and treated as a contract employee? We think not. Guided by the same considerations which govern our holding regarding implied "sanctions" for a district's failure to reclassify pursuant to section 13335, we conclude the Legislature did not intend the "sanctions" of either automatic reclassification to contract status of a previously employed temporary teacher under section 13329 or the elimination from that section of the restrictions regarding eligibility for more tenured service. The Legislature's intent in failing to expressly set forth consequences once again permits the appropriate administrative tribunal or court to fashion an employee's remedy or district's "sanction" consistent with the facts of the particular case including the establishment of prejudice to the employee in accordance with the stated purposes of the statutory scheme.

As we have explained, perhaps at greater length than necessary, other than the technical lapse relating to the failure to sign written agreements for the balance of the year 1973, and the entire school year 1974-1975, there is nothing in this record which hints of prejudice to plaintiff. There is also no suggestion the oversight by the District was

other than inadvertent. After viewing this factual setting in favor of the employee within the judgment before us, we hold Haase has not carried his burden establishing his right to a peremptory writ of mandate.

*Disposition*

The judgment is affirmed.

Brown (Gerald), J., and Staniforth, J., concurred.