[No. B152141. Second Dist., Div. Two. July 18, 2002.]

SALLIE STRYKER, Plaintiff and Appellant, v.
ANTELOPE VALLEY COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

## COUNSEL

Lawrence Rosenzweig for Plaintiff and Appellant.

Law Offices of Robert J. Bezemek and Robert J. Bezemek for Community College Council of the California Federation of Teachers, the Peralta Federation of Teachers, AFT Local 1603, CFT/AFT, AFL-CIO and the Faculty Association of the California Community Colleges as Amici Curiae on behalf of Plaintiff and Appellant.

Liebert Cassidy Whitmore and Mary L. Dowell for Defendants and Respondents.

## OPINION

**ASHMANN-GERST, J.**—Sallie Stryker (appellant), a sociology teacher, appeals from the judgment denying her writ of mandate seeking to compel Antelope Valley Community College District, Board of Trustees of Antelope Valley Community College District, and Linda Spink[1] (collectively, the District) to reclassify her as a contract or regular employee. In ruling in favor of the District, the trial court relied exclusively on the Fourth District's opinion in *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977 [95 Cal.Rptr.2d 837] (*Balasubramanian*). We decline to follow *Balasubramanian*. Accordingly, we reverse and remand. We direct the trial court to determine whether appellant was assigned to work in excess of 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties for more than two semesters or three quarters in a three-year period (60 percent of full-time). If appellant

[1]Linda Spink was sued in her capacity as president of Antelope Valley Community College District.

exceeded 60 percent of full-time, the trial court shall enter judgment in her favor and direct the District to reclassify her as a contract employee.

PROCEDURAL AND FACTUAL HISTORY

1. *Appellant's employment with the District.*

The District hired appellant to teach sociology pursuant to consecutive temporary employment contracts. Her employment was under the auspices of Education Code section 87482.5,[2] which enables a community college district to employ a temporary teacher on a perennial basis to work not more than 60 percent of a full-time assignment for regular employees.[3] The District considers a full-time teaching "load" in sociology to be 15 units per semester. Appellant was assigned to teach nine classroom units in the fall 1997, the spring 1998, the fall 1998, the fall 1999, and the spring 2000, which the District considered a 60 percent load. In the spring 1999, she was assigned to teach six classroom units, which the District considered less than a 60 percent load. In addition to appellant's assigned classroom schedule, she supervised work experience students as follows: one in the fall 1997, three in the spring 1998, one in the fall 1998, three in the fall 1999, and seven in the spring 2000.

2. *Work experience classes.*

The work experience classes allow a student to receive one to four units for working in a job related to the student's particular field of study. Students enroll through the regular class registration process. A teacher supervises these students, confers with their on-the-job supervisors, and gives them a final grade. The teachers are paid a stipend, up to three hours per student. As a matter of practice, the District does not count a teacher's work experience assignments in calculating either a full-time or 60 percent temporary teacher's load.

3. *Appellant's petition for writ of mandate and this appeal.*

On June 21, 2000, appellant filed a petition for writ of mandate with the superior court to compel the District to reclassify her as a contract or regular

---

[2]All further statutory references are to the Education Code unless otherwise indicated.

[3]Section 87482.5 provides: "(a) Notwithstanding any other provision of law, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties shall be classified as a temporary employee, and shall not become a contract employee under Section 87604.

"(b) Service as a substitute on a day-to-day basis by persons employed under this section shall not be used for purposes of calculating eligibility for contract or regular status."

employee on the grounds that her work experience assignments, when coupled with her teaching load, caused her to exceed 60 percent of full-time, triggering her eligibility for tenure pursuant to sections 87482,[4] 87482.5, and 87604.[5]

In its minute order denying appellant's writ of mandate, the trial court cited *Balasubramanian*, deciding: "That case states that under Education Code Section 87482.5, any person who is employed to teach community college classes for not more than 60 percent of the hours per week considered a full-time assignment shall be classified as a temporary employee under section 87604. Nothing in section 87482.5 says that a temporary employee who exceeds the 60 percent limit MUST be reclassified as a contract employee." The trial court did not reach the second issue presented by appellant's writ, which is whether her work experience assignments caused her to exceed 60 percent of full-time.

This timely appeal followed.

Upon petition, we allowed Community College Council of the California Federation of Teachers, the Peralta Federation of Teachers, AFT Local 1603, CFT/AFT, AFL-CIO, and the Faculty Association of the California Community Colleges to file a joint amici curiae brief on appellant's behalf.

### QUESTIONS PRESENTED

1. Is a temporary community college teacher entitled to reclassification upon exceeding 60 percent of full-time?

2. Did appellant's work experience assignments in fact cause her to exceed 60 percent of full-time?

---

[4]Section 87482 provides: "(a) Notwithstanding the provisions of Section 87480, the governing board of a community college district may employ any qualified individual as a temporary faculty member for a complete school year but not less than a complete semester or quarter during a school year. The employment of those persons shall be based upon the need for additional faculty during a particular semester or quarter because of the higher enrollment of students during that semester or quarter as compared to the other semester or quarter in the academic year, or because a faculty member has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board. [¶] Such employment may be pursuant to contract fixing a salary for the entire semester or quarter.

"(b) No person shall be so employed by any one district under this section for more than two semesters or three quarters within any period of three consecutive years."

[5]Section 87604 provides: "The governing board of a community college district shall employ each academic employee as a contract employee, regular employee, or temporary employee."

## STANDARD OF REVIEW

■ "In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings. However, we exercise our independent judgment on legal issues." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53 [80 Cal.Rptr.2d 137].)

## DISCUSSION

### 1. *Reclassification by operation of law.*

■ Whether a temporary community college teacher who exceeds 60 percent of full-time is entitled to reclassification is a legal issue. Therefore, we exercise our independent judgment.

In broaching this issue, we are confronted with a split of authority. While *Balasubramanian* holds that a temporary employee who exceeds 60 percent of full-time is not entitled to automatic reclassification (*Balasubramanian, supra,* 80 Cal.App.4th at p. 984), *Kalina v. San Mateo Community College Dist.* (1982) 132 Cal.App.3d 48 [183 Cal.Rptr. 12] (*Kalina*) implicitly holds the opposite.

The District urges us to reject *Kalina*, and to follow the lead of the Fourth District in *Balasubramanian*. *First*, the District contends that *Balasumbramian* considered and correctly applied the applicable precedents and statutes. *Second*, the District maintains that the cases cited by appellant (and, ostensibly, the amici curiae parties) are no longer controlling because they predate the 1988 statutory changes to the Education Code. *Third*, the District argues that *Kalina* is distinguishable because the teacher in that case was employed full-time or virtually full-time.

We are not persuaded by the District's arguments, and conclude that *Kalina* was properly decided. For reasons we discuss below, we hold that a temporary community college teacher who exceeds 60 percent of full-time is entitled to reclassification by operation of law.

### a. *Kalina, not Balasubramanian, is consistent with the applicable law.*

The Education Code governs the rights and classification of a community college teacher. "The governing board of a community college district shall employ each academic employee as a contract employee, regular employee, or temporary employee." (§ 87604.) A contract employee is probationary,

and a regular employee is permanent. (§ 87602.) While a community college may terminate a temporary employee at its discretion (§ 87665), a contract or regular employee may be terminated only for statutorily specified cause (§ 87732), and only after being provided with notice and a hearing before termination. (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629] (*Balen*).)

As demonstrated above, teachers' rights are dictated by classification. Not surprisingly, over the last century teachers have litigated classification issues in order to preserve these rights. Thus, before analyzing whether *Kalina* or *Balasubramanian* correctly interpreted the Education Code, we survey past precedent to shape our perspective on the current classification system.

We begin with *Grigsby v. King* (1927) 202 Cal. 299 [260 P. 789] (*Grigsby*). In *Grigsby*, our Supreme Court held that a school district was required by the Teachers' Tenure Act to classify a teacher as a permanent employee because she completed two years of successful work. The court noted that the school board's power to classify a teacher was "modified and limited by the provisions of [Political Code section 1609] subdivisions (c), (d), and (e). It is therein provided that the board shall classify as substitutes only 'persons employed for less than a school year to take the places of absent regular teachers'; that the board shall classify as probationary teachers only 'those persons employed for the school year and who have not been classified as permanent.' And subdivision (e), under attack here . . . , compels the board—all boards in all districts—to classify as permanent all successful, two-year teachers, and to make its decision as to whether or not the teacher is a successful one at the end of a two-year period. It limits the power of the board to act otherwise." (*Grigsby*, at p. 305.) The teaching of *Grigsby* is clear—school boards lacked the power in 1927 to classify teachers outside of the strict classification boundaries dictated by the Political Code.

Soon thereafter, *La Shells v. Hench* (1929) 98 Cal.App. 6 [276 P. 377] (*La Shells*) held that a teacher who successfully taught for two years was entitled to be classified as permanent even though the school board did not make the reclassification official. "This lack of the board to act, however, does not prevent the *operation of the law* in making such classification, and as the petitioner, under the law, was entitled to such classification, she must be so considered as classified, even though the board of trustees has failed to act, and at all times proceeded to enter into contracts purporting to limit the term of employment from year to year. To hold otherwise would be to decide that the provisions of the Teachers' Tenure Act may be evaded by the expedient of using contracts reading for a yearly employment, and thus giving the

board of trustees the authority to dispense with the services of a teacher, even though section 1609 of the Political Code prohibits dismissal of a teacher, other than for cause, and requires that notice shall be given to the teacher, and a hearing had." (*Id.* at p. 12, italics added.) The *La Shells* court supported this holding by citing *Grigsby*. In concluding that reclassification occurred by operation of law, the *La Shells* court merely placed a label on the principle that a teacher's entitlement to reclassification springs from the application of statutory language to completed teaching assignments.

Numerous cases that followed *Grigsby* and *La Shells* were decided in a consistent manner. In *Cullen v. Board of Education* (1932) 126 Cal.App. 510, 512 [ 15 P.2d 227, 16 P.2d 272], that court noted: "The petitioner's tenure as a permanent teacher became fixed by operation of law." In *Chambers v. Davis* (1933) 131 Cal.App. 500, 504 [ 22 P.2d 27 ], the court concluded that a teacher was "automatically entitled by operation of law to classification as a permanent teacher." Continuing that tradition, *Abraham v. Sims* (1935) 2 Cal.2d 698, 710 [42 P.2d 1029], held that service for the requisite period by a teacher "automatically effects the classification and nothing more is required to accomplish it," and *La Rue v. Board of Trustees* (1940) 40 Cal.App.2d 287, 292 [104 P.2d 689], determined that when statutory requisites were met, teachers "attained by operation of law the classification of permanent employees of the school district." Decades later, *Vittal v. Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112, 118-119 [87 Cal.Rptr. 319], the court stated: "The provisions for permanent status are contained in the Education Code and if they have been met the attainment of permanent status is automatic. No application need be made, nor is any affirmative action on the part of the school board necessary. [Citations.]" In *Campbell v. Graham-Armstrong* (1973) 9 Cal.3d 482, 488 [107 Cal.Rptr. 777, 509 P.2d 689], the court held that teachers required to teach "for the minimum school day prescribed by the code constituted them full-time employees." Finally, *Kamin v. Governing Board* (1977) 72 Cal.App.3d 1014, 1017 [139 Cal.Rptr. 853] (*Kamin*), stated that "[t]he matter of classification of teachers as probationary or permanent is determined by state law" and then held that the plaintiff, a teacher meeting the statutory prerequisites for permanent employment status, was entitled to reclassification.

■ Having surveyed this body of law, we come to the conclusion that educational entities have no power to classify teachers outside the applicable statutory bounds, and that reclassification can occur by operation of law. Furthermore, "[b]ecause the . . . temporary classification[] [is] not guaranteed procedural due process by statute, [it is] narrowly defined by the

Legislature, and should be strictly interpreted." (*Balen, supra,* 11 Cal.3d at p. 826.) With these principles firmly in mind, we turn to the relevant statutes pertaining to temporary employees and the cases that interpret the applicable statutory language.

Section 87482 permits a community college district to employ a teacher as a temporary faculty member. However, subdivision (b) of that section provides: "No person shall be so employed by any one district under this section for more than two semesters or three quarters within any period of three consecutive years." Section 87482.5 permits a community college district to employ a teacher for 60 percent of a full-time assignment. The statutes do not establish what happens if a temporary teacher exceeds 60 percent of full-time.

For the answer to that specific question, we examine a group of cases— which includes *Balasumbramian* and *Kalina*—involving appeals by temporary teachers seeking to be reclassified on the theory that their assignments caused them to exceed 60 percent of full-time. The other cases are *Rooney v. San Diego Community College Dist.* (1982) 129 Cal.App.3d 977 [181 Cal.Rptr. 464] (*Rooney*), *Saraceno v. Foothill-De Anza Community College Dist.* (1982) 127 Cal.App.3d 850 [179 Cal.Rptr. 742] (*Saraceno*), and *McGuire v. Governing Board* (1984) 161 Cal.App.3d 871 [208 Cal.Rptr. 260] (*McGuire*).[6]

In *Kalina*, the teacher "was first employed by respondent college district as a temporary employee to teach 12 units in the fall 1976 semester. She was subsequently employed as a full-time temporary employee for the spring 1977 semester as well as the fall and spring semesters of the 1977-1978 school year, teaching 15 units per semester, for the purpose of replacing instructors on leave. Although [Kalina] was hired to teach 14 units in the fall of the 1978-1979 school year, respondent college district offered her only a 3-unit teaching assignment for the spring of that year, thus restricting her to 60 percent or less of a full-time teaching assignment in an apparent attempt

---

[6]The amici curiae parties also cite *Covino v. Governing Board* (1977) 76 Cal.App.3d 314 [142 Cal.Rptr. 812] (*Covino*). In *Covino*, a community college district hired Covino under now repealed section 13337.5 to work as a full-time temporary teacher for the 1975-1976 school year. When he was hired, Covino was advised by the community college district that it was prohibited from hiring a temporary employee for more than two semesters in a three-year period. In order to work the following year, Covino offered to waive his tenure rights. The First Appellate District concluded that Covino could not waive his tenure rights and that he could not be reemployed as a temporary teacher within a three-year period because he had already worked two semesters. (*Covino, supra,* at pp. 320, 322-323.)

to prevent her from acquiring vested rights as a probationary employee under section 87482."[7] (*Kalina, supra,* 132 Cal.App.3d at p. 51.)

Kalina filed a petition for writ of mandate seeking to be reclassified as a probationary employee. The trial court denied the petition. Kalina appealed, arguing that section 87482 mandated reclassification. The *Kalina* court reversed, effectively reclassifying the plaintiff as a probationary employee by operation of law. The court stated: "Our holding is in harmony with the general policy of the teacher classification system to afford teachers some measure of employment security. [Citation.] . . . While it is also the policy of the law authorizing temporary employment of teachers to permit flexibility in teacher assignments and to prevent overstaffing [citations], our holding does not in any meaningful way impair such flexibility, for, under section 87482 authorizing the indefinite hiring of temporary employees for 60 percent or less of full-time assignments, community college districts retain considerable control over the hiring of temporary and probationary staff. [¶] We find no merit in respondents' argument that appellant's employment contract providing that she would at all times be classified as a temporary employee should be deemed controlling. Both statutory and case law prohibit the waiver of benefits afforded by the tenure law. [Citations.]" (*Kalina, supra,* 132 Cal.App.3d at pp. 54-55, fn. omitted.) *Kalina* did not expressly state that the plaintiff was reclassified by operation of law. Undeniably, however, that is the logical import of the decision.

Next came *Rooney, Saraceno,* and *McGuire.* None of the teachers in those three cases were successful on appeal. However, they lost only because they

---

[7] When *Kalina* was decided, the fourth paragraph of section 87482 contained the 60 percent language that is now in section 87482.5, subdivision (a).

Former section 87482 provided: "Notwithstanding the provisions of Section 87480, the governing board of a community college district may employ as an instructor in grade 13 or 14, for a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify that person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, or because a certificated employee has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons employed, to that need, as determined by the governing board. [¶] Such employment may be pursuant to contract fixing a salary for the entire semester or quarter. [¶] No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years. [¶] Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties shall be classified as a temporary employee, and shall not become a contract employee under the provisions of Section 87604." (As anacted by Stats. 1976, ch. 1010, § 2, pp. 4340-4341.)

had not in fact exceeded 60 percent of full-time. By entertaining the issue, these cases recognized that reclassification of a 60 percent temporary employee occurs by operation of law, and were decided consistent with *Kalina*.

Then, in 2000, the Fourth District decided *Balasubramanian*. In that case, the teacher claimed that she exceeded 60 percent of full-time, entitling her to be reclassified as a contract employee. The Fourth District disagreed, stating: "Preliminarily, we note Balasubramanian erroneously assumes she automatically attains contract status once she exceeds the 60 percent FTE limit of section 87482.5. She cites no statutory authority for her assumption and we have found none. . . . The provisions under which she was employed were imposed '[n]otwithstanding any other provision of law . . . .' (§ 87482.5, subd. (a).) Having been employed to teach not more than 60 percent FTE under section 87482.5, she cannot now claim the rights of other temporary employees unrestricted by the 60 percent FTE limit. Nothing in the record before us shows the terms of Balasubramanian's employment required her to fill a position of a regular employee absent from service, to teach temporary classes for a specified amount of time or to teach classes due to higher student enrollment. (§§ 87478, 87480, 87481.) In contrast to those provisions *mandating* contract status upon reemployment or continuation of particular duties, section 87482.5 provides no such consequence. The Legislature easily could have expressly stated that a temporary employee who exceeds the 60 percent FTE limit must be reclassified as a contract employee. However, 'legislative silence in this statutory labyrinth, remarkable for its attention to minutia, connotes the Legislature's intent not to provide for a rigid, mechanically applied sanction.' [Citation.]" (*Balasubramanian, supra*, 80 Cal.App.4th at p. 984.)

After reviewing these cases, we conclude that *Kalina* rather than *Balasubramanian* was correctly decided.

The effect of *Balasubramanian* is to allow a community college district to classify an employee who exceeds 60 percent of full-time as temporary even though not expressly permitted by statute. We conclude that *Balasubramanian* violates the admonition in *Balen*, i.e., that temporary employee statutes should be strictly construed. In other words, we conclude that an employee should not be classified as temporary unless that classification is specifically authorized. If the statutes are otherwise silent, then the catchall provision in section 87477 controls. Section 87477 provides in relevant part: "Governing boards of community college districts shall classify as contract employees, those faculty members who have not been classified as regular employees or as temporary employees." As we read the statutes, if they do not provide for

a temporary or regular classification, a community college district has but one choice, which is to classify a teacher as a contract employee. *Kalina*, in contrast to *Balasubramanian*, is consistent with *Balen*, and with the general proposition that an educational entity lacks the power to classify outside statutory boundaries.

The District invites us to adopt the reasoning in *Balasubramanian*. We decline this invitation.

To begin, *Balasubramanian* did not analyze or even cite *Kalina*, nor did it discuss the body of law pertaining to reclassification of teachers by operation of law. In its analysis of whether the plaintiff was entitled to contract status if she exceeded 60 percent of full-time, *Balasubramanian* cited *Haase v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913 [170 Cal.Rptr. 366] (*Haase*); *McGuire, supra,* 161 Cal.App.3d 871; *Balen, supra,* 11 Cal.3d 821; *Rooney, supra,* 129 Cal.App.3d 977; *California Teachers Assn. v. Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556 [145 Cal.Rptr. 100] (*California Teachers Assn.*); *Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223 [142 Cal.Rptr. 749] (*Santa Barbara Fed. of Teachers*); and *Peralta Federation of Teachers v. Peralta Community College Dist.* (1979) 24 Cal.3d 369 [155 Cal.Rptr. 679, 595 P.2d 113] (*Peralta*). Most of these cases implicitly acknowledge that reclassification occurs by operation of law. None of them negates the possibility. (See *Haase, supra,* 113 Cal.App.3d at pp. 924-925 [analyzing the consequences of a community college district's failure to annually reclassify a teacher as temporary]; *McGuire, supra,* 161 Cal.App.3d 871 [citing to *Kalina*, but deciding against the teacher because he did not demonstrate that he taught more than 60 percent of full-time]; *Balen, supra,* 11 Cal.3d 821 [concluding that a teacher was entitled to be classified as probationary because he met statutory prerequisites]; *Rooney, supra,* 129 Cal.App.3d 977 [determining that a teacher was not entitled to reclassification because he did not exceed 60 percent of full-time]; *California Teachers Assn., supra,* 79 Cal.App.3d 556 [considering whether teachers obtained probationary status]; *Santa Barbara Fed. of Teachers, supra,* 76 Cal.App.3d 223 [recognizing that under particular facts the statutory scheme can compel reclassification]; *Peralta, supra,* 24 Cal.3d 369 [ordering classification of teachers as part-time probationary certificated employees].) However, *Balasubramanian* cited these cases only to support statements about the nature and purpose of temporary employees and the classification system. *Balasubramanian* did not analyze whether the rights of teachers to reclassification by operation of law, as applied in *Kalina*, have been or should be abrogated in any respect.

Furthermore, *Balasubramanian* failed to explain how a teacher who exceeds 60 percent of full-time can be classified as temporary. Rather,

*Balasubramanian* cited *Rooney* to support the following statement: "By its express terms, section 87482.5 classifies Balasubramanian as a temporary employee who is prohibited from becoming a contract employee." (*Bala-subramanian, supra,* 80 Cal.App.4th at pp. 983-984.) But neither *Rooney* nor section 87482.5 supports this assertion. *Rooney* simply stated: "In view of the fact Rooney was employed by the District for the 1972-1973 school year to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties, he was properly classified as a temporary employee." (*Rooney, supra,* 129 Cal.App.3d at p. 982.) Although section 87482.5 provides that a person who is employed not more than 60 percent of the hours per week considered a full-time assignment "shall be classified as a temporary employee, and shall not become a contract employee under Section 87604," *Peralta* teaches that the restriction in the second clause only pertains to the initial classification, not a subsequent classification. *Peralta,* dealing with section 13337.5,[8] containing the relevant predecessor language of current section 87482.5, stated: "The fourth paragraph of section 13337.5 imposes two restrictions on giving other than temporary status to persons employed to teach community college classes only 60 percent of full time: the teacher (1) 'shall be classified as a temporary employee,' and (2) 'shall not become a probationary employee under the provisions of Section 13446.' The second restriction would be superfluous if the first were not construed to apply only to *initial* classification and not to preclude an otherwise authorized *subsequent* change from temporary status." (*Peralta, supra,* 24 Cal.3d at p. 381.) In any event, the restriction in section 87482.5 does not by its terms apply to employees teaching in excess of 60 percent of full-time.

---

[8]Section 13337.5, of the 1959 Education Code which is now repealed, preceded the former section 87482 discussed in *Kalina,* and the current section 87482.5. Section 13337.5 provided: "Notwithstanding the provisions of Section 13337, the governing board of a school district maintaining a junior college may employ as a teacher in grade 13 or grade 14, for less than a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, and shall be limited, in number of persons so employed, to that need, as determined by the governing board. [¶] Such employment may be pursuant to contract fixing a salary for the entire semester or quarter. [¶] No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years. [¶] Notwithstanding any other provision to the contrary, any person who is employed to teach adult or junior college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446." (Repealed by Stats. 1976, ch. 1010, § 1, p. 2384.)

Next, *Balasubramanian* opined that the plaintiff could not claim "the rights of other temporary employees unrestricted by the 60 percent FTE limit" (*Balasubramanian, supra,* 80 Cal.App.4th at p. 984) because she was hired under section 87482.5. However, *Balasubramanian* did not cite any case authority for this proposition. As indicated in *Kalina,* academic employees cannot waive their statutory rights, which coincides with the observation in *La Shells* that the applicable statutory scheme cannot be evaded by the expedient use of employment contracts. *Balasubramanian* pointed to the fact that certain statutes mandate contract status upon reemployment, but that section 87482.5 does not. However, the silence of section 87482.5 on this issue is of no moment. Ever since *Grigsby,* which is bolstered by *Balen* in connection with temporary employees, the question is whether a district has the power to impose a certain classification. If not, then the employee must be reclassified.

At the end of its analysis, *Balasubramanian* states that "[b]ecause section 87482.5 does not compel reclassification, Balasubramanian has no legally based expectation of such reclassification and is not entitled to contract employee status." (*Balasubramanian, supra,* 80 Cal.App.4th at pp. 984-985.) *Balasubramanian* cited to *Santa Barbara Fed. of Teachers* as supporting authority, but that case stated only that the "mere continuity of employment by a temporary or substitute teacher in a position regularly held by a probationary or permanent teacher does not, by itself, give rise to tenured status. [Citation.]" (*Santa Barbara Fed. of Teachers, supra,* 76 Cal.App.3d at p. 239.) We agree with the cited language. However, it compels no particular result. Reclassification arises from statute, not an employee's expectations.

Finally, we note that there was no need for *Balasubramanian* to hold that the plaintiff was *ineligible* for reclassification even if she did in fact teach more than 60 percent of full-time. In the second part of its opinion, the Fourth District concluded that the plaintiff fell under section 87482.5, subdivision (b), which states that "[s]ervice as a substitute on a day-to-day basis . . . shall not be used for purposes of calculating eligibility for contract or regular status." If the plaintiff did not exceed 60 percent of full-time, then the reclassification issue was moot.

b. *Kalina has not been superseded by statute.*

The District's suggestion that the cases cited by appellant in support of her reclassification argument[9] are no longer controlling due to statutory changes in 1988 lacks merit. The only change in the current statutes since *Kalina* was

---

[9]Appellant cited *Kalina, supra,* 132 Cal.App.3d 48; *Kamin, supra,* 72 Cal.App.3d 1014; *Haase, supra,* 113 Cal.App.3d 913; *Rooney, supra,* 129 Cal.App.3d 977; *McGuire, supra,* 161 Cal.App.3d 871; and *Saraceno, supra,* 127 Cal.App.3d 850.

decided is that the 60 percent language, which used to be in the last paragraph of section 87482, was relocated to section 87482.5, subdivision (a). The substance of the statutory language has not changed. Moreover, even if the substance had changed, the general principle of reclassification would apply. If a temporary employee was not properly classified as temporary, he or she would be entitled to be reclassified as a contract employee. (See *Kamin, supra,* 72 Cal.App.3d at pp. 1017-1018 ["The matter of classification of teachers as probationary or permanent is determined by state law. [Citation.] . . . If statutory requirements are met, a teacher's rights are automatically vested independently of any action by the governing board. [Citations.]"].) Finally, as appellant noted in her reply brief, the District's attempt to support its statutory change argument necessarily fails because it cites to sections 87605-87610, which are tenure statutes that have no bearing on our analysis.

### c. *Kalina is not distinguishable.*

Finally, the District's attempt to distinguish *Kalina* lacks merit. Whether *Kalina* involved a teacher who was employed full-time or virtually full-time is irrelevant. The District appears to suggest, for example, that *Kalina* cannot be applied to a teacher assigned to teach 61 percent of full-time for more than two semesters or three quarters in a three-year period. But the District cited no law for this proposition. In the context of determining reclassification by operation of law under sections 87482 and 87482.5, there are those who teach 60 percent or less of full-time and those who teach over 60 percent of full-time. There is no in between.

### 2. *Is appellant entitled to reclassification?*

Appellant asks us to find that her work experience classes caused her to exceed 60 percent of full-time, an issue not reached by the court below. However, we cannot decide this issue because the appellate record is devoid of evidence regarding the work experience assignments given to full-time teachers. ▮ "[T]he proper measure in determining whether the 60 percent limit is exceeded is the number of hours the person seeking tenure spends teaching classes compared to the number of hours per week a regular fully assigned employee spends on comparable duties." (*McGuire, supra,* 161 Cal.App.3d at p. 875.) ▮ Once this matter is remanded, the trial court should examine this issue accordingly.

The District contends that we can decide this issue against appellant because she did not provide any evidence that she was expected to supervise work experience students. In support of this contention, the District cites

*Ferris v. Los Rios Community College Dist.* (1983) 146 Cal.App.3d 1 [194 Cal.Rptr. 16] (*Ferris*), a case involving the rights of part-time teachers to pro rata compensation based on expected hours of service, both inside and outside of the classroom. However, *Ferris* is not on point. It did not involve the proper calculation of whether a temporary employee's assignments exceeded 60 percent of full-time. Additionally, appellant in her declaration and the District's vice-president of academic affairs in his deposition, referred to work supervision as an assignment, which connotes that it was expected service. That said, we do not foreclose the District upon remand from raising this issue and arguing the consequences of whether work experience supervision is expected or voluntary, or whether such assignments caused appellant to exceed the 60 percent limit.

The last remaining issue is the potential relief available to appellant upon remand. Appellant contends that she should be reclassified as a contract or regular employee. But while *Kalina* supports her request for reclassification as a contract employee, she provided no statutory or case authority that would entitle her to reclassification as a regular employee. We note that the amici curiae parties limit themselves to arguing that appellant attained contract status. Therefore, on remand, the issue is whether appellant is entitled to contract status.

### DISPOSITION

The judgment is reversed and remanded. The trial court shall conduct a new trial and determine whether appellant worked more than 60 percent of full-time. If she did, the trial court shall order the District to reclassify appellant as a contract employee. Appellant shall recover her costs on appeal.

Nott, Acting P. J., and Doi Todd, J., concurred.