[No. D032159. Fourth Dist., Div. One. May 17, 2000.]

KAMALA BALASUBRAMANIAN, Plaintiff and Appellant, v.
SAN DIEGO COMMUNITY COLLEGE DISTRICT et al., Defendants and
Respondents.

978

**COUNSEL**

Lloyd Edward Tooks for Plaintiff and Appellant.

Stutz, Gallagher, Artiano, Shinoff & Holtz, Jeffery A. Morris and Ray J. Artiano for Defendants and Respondents.

OPINION

WAGNER, J.*—Plaintiff Kamala Balasubramanian appeals a judgment in favor of defendants San Diego Community College District and its chancellor (together, District) after the court denied Balasubramanian's petition for writ of mandate to have District reclassify her from an academic temporary employee to an academic contract employee. The court also granted summary judgment in favor of District as to Balasubramanian's cause of action for breach of contract. Balasubramanian contends she is entitled to be classified as a contract employee because: (1) her substitute teaching assignments for two or more days were not substitutions "on a day-to-day basis" as used in Education Code[1] section 87482.5, subdivision (b); and (2) District is bound by the interpretation of the phrase "on a day-to-day basis" set forth in the San Diego Community College District Procedures (Jan. 21, 1986) (SDCC Procedures), procedure 4200.3. Balasubramanian further contends the court erred in finding her cause of action for breach of contract is barred by the doctrine of res judicata. We conclude none of these contentions have merit and accordingly affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Balasubramanian has been an academic temporary employee of District since the fall semester of the 1988-1989 school year. For the school years 1992-1993, 1993-1994, 1994-1995 and 1995-1996, District employed Balasubramanian to teach community college classes for 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties (60 percent full-time equivalent or FTE). In addition to her 60 percent FTE assignments, District gave Balasubramanian substitute teaching assignments, including assignments for two or more consecutive class sessions.

In November 1995, Balasubramanian applied for the position of assistant professor of English. District's selection committee consisted of eight members, including an affirmative action representative. When the selection committee interviewed Balasubramanian, the affirmative action representative was absent. Balasubramanian was not selected for the assistant professor position.

Balasubramanian sued District in federal court, alleging employment discrimination when District failed to select her for the position of assistant

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All statutory references are to the Education Code unless otherwise specified.

professor based on her national origin and gender. Balasubramanian also alleged breach of contract based on the absence of an affirmative action representative during her interview. In a claim for contract employee status, Balasubramanian alleged District failed to reclassify her as a contract employee when the total hours she taught, including her substitute teaching assignments, exceeded 60 percent FTE. After trial, the jury found in favor of District on Balasubramanian's discrimination claims. The court dismissed the claims for breach of contract and entitlement to contract status based on Eleventh Amendment immunity.

Balasubramanian then sought a writ of mandate in the superior court under Code of Civil Procedure section 1085 to have District reclassify her as an academic contract employee. The petition alleged that between 1992 and 1996, District assigned her to teach classes for 60 percent FTE as well as substitute classes for two or more consecutive sessions, thereby exceeding the 60 percent FTE limit of section 87482.5, subdivision (a) and entitling her to contract status. Balasubramanian also sued District for breach of contract, alleging she was denied the right to have an affirmative action representative present during her interview with District's selection committee for the position of assistant professor of English.

The court denied Balasubramanian's petition for writ of mandate, finding District had no duty to reclassify her as an academic contract employee. The court also granted District's motion for summary judgment as to Balasubramanian's breach of contract cause of action on the ground it was barred by the doctrine of res judicata.

DISCUSSION

I

■ The Education Code authorizes community college districts to hire qualified academic employees in any of three categories: regular (permanent), contract (probationary) and temporary. (§§ 87602, 87604.) This classification system is designed to give a degree of academic tenure in direct relation to years of employment. (*Haase v. San Diego Community College Dist.* (1980) 113 Cal.App.3d 913, 917 [170 Cal.Rptr. 366].) "A 'regular' employee is . . . one who has achieved tenure. 'Contract' status is the first step toward tenure." (*McGuire v. Governing Board* (1984) 161 Cal.App.3d 871, 874 [208 Cal.Rptr. 260].) Regular and contract employees cannot be arbitrarily dismissed and are entitled to notice and hearing before termination. (§§ 87732 et seq., 87740.)

To fill its short-range needs, a community college district may employ a qualified person as a temporary employee. (§ 87604; *Haase v. San Diego*

*Community College Dist., supra*, 113 Cal.App.3d at p. 917.) In contrast to regular and contract employees, temporary employees may be summarily dismissed absent an infringement of constitutional or contractual rights. (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629].)

Community college districts have the authority to employ two types of academic employees designated as temporary: those hired for a limited time to meet certain specified needs (§§ 87478, 87480, 87481, 87482), and those hired on a part-time basis of 60 percent or less of a full-time workload. (§ 87482.5). In the first category, temporary employees include faculty employed to (1) fill positions of regular employees absent from service or positions for which no regular employee is available (§ 87478), (2) teach temporary classes from day to day during the first three school months or conduct certain classes for not more than four months (§ 87480), and (3) teach for a complete school year based on need due to a faculty member's leave or long-term illness (§ 87481) or higher enrollment of students. (§ 87482.) Temporary employees hired under these statutory provisions who are reemployed the following year or whose duties continue beyond specified periods are entitled to be classified as contract employees. (§§ 87478, 87480, 87481.)

The second category of temporary employees is found in section 87482.5: "(a) Notwithstanding any other provision of law, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties shall be classified as a temporary employee, and shall not become a contract employee under Section 87604. [¶] (b) Service as a substitute on a day-to-day basis by persons employed under this section shall not be used for purposes of calculating eligibility for contract or regular status." Thus, temporary employees hired under section 87482.5 may continue to teach year after year without becoming contract employees, provided each year they teach not more than 60 percent of a full-time assignment exclusive of day-to-day substitution assignments. "The overriding policy consideration is to give the district maximum flexibility in classifying newly hired teachers while preventing an exploitation of temporary instructors who carry the equivalent of a full-time teaching load without any of the benefits of tenured status." (*McGuire v. Governing Board, supra,* 161 Cal.App.3d at p. 875.)

Balasubramanian does not dispute she has been employed since 1992 to teach 60 percent FTE under section 87482.5. By its express terms, section

87482.5 classifies Balasubramanian as a temporary employee who is prohibited from becoming a contract employee. (See *Rooney v. San Diego Community College Dist.* (1982) 129 Cal.App.3d 977, 982 [181 Cal.Rptr. 464] [plaintiff employed by District as 60 percent FTE employee properly classified as temporary, rather than contract employee].) Nevertheless, Balasubramanian contends she taught classes in excess of 60 percent FTE when given multiple-day substitute teaching assignments, entitling her to be reclassified as a contract employee as of the fall semester of the 1994-1995 school year.

Preliminarily, we note Balasubramanian erroneously assumes she automatically attains contract status once she exceeds the 60 percent FTE limit of section 87482.5. She cites no statutory authority for her assumption and we have found none. Although Balasubramanian's employment contract is not in the record before us, it must be presumed in support of the judgment that she was employed in accordance with section 87482.5 and was properly notified in writing of the temporary nature of her employment each academic year.[2] (§ 87477; see *California Teachers Assn. v. Pasadena Unified Sch. Dist.* (1978) 79 Cal.App.3d 556, 560 [145 Cal.Rptr. 100].) The provisions under which she was employed were imposed "[n]otwithstanding any other provision of law . . . ." (§ 87482.5, subd. (a).) Having been employed to teach not more than 60 percent FTE under section 87482.5, she cannot now claim the rights of other temporary employees unrestricted by the 60 percent FTE limit. Nothing in the record before us shows the terms of Balasubramanian's employment required her to fill a position of a regular employee absent from service, to teach temporary classes for a specified amount of time or to teach classes due to higher student enrollment. (§§ 87478, 87480, 87481.) In contrast to those provisions *mandating* contract status upon reemployment or continuation of particular duties, section 87482.5 provides no such consequence. The Legislature easily could have expressly stated that a temporary employee who exceeds the 60 percent FTE limit must be reclassified as a contract employee. However, "legislative silence in this statutory labyrinth, remarkable for its attention to minutia, connotes the Legislature's intent not to provide for a rigid, mechanically applied sanction." (*Haase v. San Diego Community College Dist., supra,* 113 Cal.App.3d at p. 924.) Because section 87482.5 does not compel reclassification, Balasubramanian has no legally based expectation of such reclassification and is not entitled to contract

[2]The Supreme Court in *Peralta Federation of Teachers v. Peralta Community College Dist.* (1979) 24 Cal.3d 369, 376 [155 Cal.Rptr. 679, 595 P.2d 113], described temporary teachers hired to teach 60 percent or less FTE as follows: " 'They receive a written letter of notification from the district regarding their employment for the coming academic year. The letter states the instructor's potential assignment and specifies that his [or her] position is a temporary one. They are hired from quarter to quarter or from semester to semester, as the case may be. They are uniformly dismissed at the end of each year.' "

employee status. (See *Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 239 [142 Cal.Rptr. 749] [properly classified temporary employee not entitled to contract status merely because of continued service over several years].)

Even if Balasubramanian were *eligible for*, rather than *entitled to*, reclassification as a contract employee by virtue of teaching more than 60 percent FTE, section 87482.5, subdivision (b) prohibits such reclassification where the service as a substitute is on a day-to-day basis. Thus, we must decide whether Balasubramanian's multiple-day substitution assignments were "on a day-to-day basis" within the meaning of section 87482.5, subdivision (b).

## A

### *Rules of Statutory Interpretation*

"Statutory interpretation presents a question of law subject to independent review. [Citation.] ' "Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citation.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" ' [Citations.]" (*Bollinger v. San Diego Civil Service Com.* (1999) 71 Cal.App.4th 568, 572 [84 Cal.Rptr.2d 27].)

## B

### *Plain Language*

Balasubramanian contends the phrase "day-to-day" as used in section 87482.5, subdivision (b) is unambiguous and certain. She cites one of several dictionary definitions to support her assertion it means one day only: "a day at a time without provision for continuance thereafter." (Webster's 3d New Internat. Dict. (1993) p. 578.) Thus, she claims, substitute assignments that are intended to have a duration of two or more days are not day-to-day. She asserts the court was bound by this clear and unambiguous meaning and should not have referred to legislative history and legislative intent.

According to various dictionary definitions, "day-to-day" has several meanings, both restrictive (e.g., one day at a time) and expansive (e.g.,

everyday, daily, the course of successive days).[3] Because the phrase "day-to-day" as used in section 87482.5 is susceptible of more than one reasonable interpretation, we must resort to extrinsic aids to ascertain its meaning.

## C

### *Legislative Intent*

The legislative history behind section 87482.5 supports an interpretation of "day-to-day" as meaning 60 percent FTE employees can be considered for short-term substitute teaching assignments. Assembly Bill No. 2503 (1985-1986 Reg. Sess.) was introduced on March 8, 1985, and was proposed and sponsored by the California Federation of Teachers, AFT, AFL-CIO. It was later enacted as section 87482.5. The bill analysis prepared by the Senate Rules Committee stated:

"Existing law authorizes the governing board of a community college district to hire temporary employees, as long-term substitutes as specified. Temporary employees hired as long-term substitute instructors are not prohibited from applying this service toward eligibility as contract (probationary) or regular (permanent) employees.

"A current law also states that any person hired to instruct adult or community college classes for not more than 60% of the hours per week considered to be a full-time assignment is classified as a temporary employee and cannot apply this service toward eligibility as a contract employee.

"This bill clarifies that temporary employees who teach less than 60% of the full-time assignment and who substitute on a day-to-day basis in a community college cannot apply this service toward eligibility for contract or regular status." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 2503 (1985-1986 Reg. Sess.) as amended June 5, 1985.)

The Senate Rules Committee cited the following as an argument in support of the bill: "Proponents state that some temporary employees in the 'less than 60% category' are not permitted to substitute on a day-to-day basis because the additional substitute service causes their total instructional time to exceed 60% of a full-time assignment and makes them potentially eligible for reemployment rights. This bill clarifies that this group of temporary

---

[3]Balasubramanian's definition of "day-to-day" as "A day at a time without provision for continuance thereafter" comes from Webster's Third New International Dictionary (unabridged). (Webster's 3d New Internat. Dict., *supra*, at p. 578.) However, that same dictionary also defines "day-to-day" as "A day at a time in unbroken succession . . . ." (*Ibid.*)

employees may substitute on a day-to-day basis without changing their employment status." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 2503 (1985-1986 Reg. Sess.) as amended June 5, 1985, at p. 2.)

The ostensible purpose of section 87482.5 was to encourage utilization of 60 percent FTE employees who would otherwise be excluded from serving as substitutes. At the same time, such substitute service would not allow these employees to exceed the 60 percent FTE limit of their classification. In this regard, the statute provides for the hiring of 60 percent FTE employees for assignments other than long-term substitutions. The Legislature's choice of the phrase "day-to-day" distinguishes long-term from short-term substitution assignments and thereby accomplishes the statute's purpose.

## D

### *Statutory Scheme*

The Education Code, of which section 87482.5 is a part, also supports a finding that "day-to-day" means short-term. Several other Education Code provisions affecting classification of temporary employees contain express, finite time periods such as "one complete school year" (§§ 87478, 87481), "the first three school months of any school term" (§ 87480), "not more than four school months of any school term" (§ 87480), "a period not to exceed 20 working days" (§ 87480), and "two semesters or thee quarters within any period of three consecutive years" (§ 87482). Consistent with this practice, the Legislature could have provided in section 87482.5, subdivision (b) that service as a substitute for one day only shall not be used for purposes of calculating eligibility for contract or regular status. Instead, the Legislature purposely chose day-to-day to allow for the possibility of substitution assignments for one or more days, consecutive or otherwise, provided the assignments were less than long-term.

Further, section 87480 uses the phrase "day-to-day" as follows:

"Governing boards of community college districts shall classify as temporary employees faculty members, who are employed to serve from *day to day* during the first three school months of any school term to instruct temporary classes not to exist after the first three school months of any school term or to perform any other duties which do not last longer than the first three school months of any school term, or to instruct in special day and evening classes for adults or in schools of migratory population for not more than four school months of any school term. . . .

"In any district, the governing board may, to prevent the stoppage of district business when an actual emergency arises and persons are not immediately available for contract classification, make an appointment to a position on a temporary basis for a period not to exceed 20 working days. The person so appointed shall be deemed to be a temporary employee who is employed to serve from *day to day*. Service by a person in such an appointment on a temporary basis shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a regular employee of a community college district." (Italics added.)

Within the context of this provision, it would be incongruous to allow a person to teach from day-to-day for three or four months or a period not to exceed 20 working days if "day-to-day" meant one day only. ■ We must construe identical words in different parts of the same act or in different statutes relating to the same subject matter as having the same meaning. (*Chandis Securities Co. v. City of Dana Point* (1996) 52 Cal.App.4th 475, 486 [60 Cal.Rptr.2d 481].) Thus, the phrase "day-to-day" cannot, as Balasubramanian claims, mean one day only.

E

*Public Policy*

■ Balasubramanian's interpretation of "day-to-day" to mean one day only would defeat the policy behind the statute. Taking Balasubramanian's argument to its logical conclusion, 60 percent FTE employees could substitute beyond the 60 percent limit as long as they were notified of each assignment one day at a time. Even if the need for a brief sequential substitution assignment were known, Balasubramanian's interpretation would require District to make discrete, individual assignments one day at a time. Alternatively, it would require District to assign a different substitute instructor for each consecutive day, depriving students of the opportunity for continuity. (See *Santa Barbara Federation of Teachers v. Santa Barbara High Sch. Dist.*, *supra*, 76 Cal.App.3d at pp. 232-233 [using various substitute teachers would be harmful to both students and those substitutes].) The practical effect of such an interpretation would be to preclude District, contrary to the statute's purpose, from assigning qualified temporary employees such as Balasubramanian to short-term substitution positions. "The law respects form less than substance." (Civ. Code, § 3528.)

Moreover, if we accept Balasubramanian's restrictive interpretation of "day-to-day," she would be eligible for contract status whenever she accepted District's offer of short-term substitution assignments on consecutive

days instead of one day at a time, thereby obtaining indirectly what the statute prohibits her from obtaining directly. (§ 87482.5, subd. (b).) Reclassification rights should depend on the substantive nature of actual service rather than on the manner in which that service is engaged. (See *Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 473 [247 Cal.Rptr. 790].) As we previously discussed, only those temporary employees given long-term substitution assignments, who generally serve under conditions comparable to those of their full-time counterparts, are entitled to be reclassified as contract employees.

F

*SDCC Procedures, Procedure 4200.3*

Balasubramanian contends District is bound by its own interpretation of the phrase "on a day-to-day basis" set forth in its personnel procedure 4200.3 that provides in part: "Day-to-day substitution is to be interpreted as day-by-day substitution: (A) Authorization for substitution is to be given by the site administrator for one day only[;] (B) If it is learned that a substitute is needed on a succeeding day, the administrator may again authorize that individual to substitute[;] (C) If the site administrator knows that the need for substitution in a particular class is going to continue more than one day, employees with 60% or partial contracts should not be selected."

According to District's assistant chancellor of human resources and administrative services, SDCC Procedures, procedure 4200.3 was intended as a conservative approach to guide administrators in selecting substitutes in an effort to reduce future problems concerning a substitute claiming to be entitled to contract status. Even the attorney for the teachers union believed neither the statute nor case law warranted such a strict interpretation in that nowhere is a distinction made between substitutions on consecutive or nonconsecutive days.

District's procedures, while purporting to authorize and restrict the employment of substitute instructors, is advisory only, containing permissive, rather than mandatory language. Although SDCC Procedures, procedure 4200.3 may assist District in its administrative duties with respect to substitute instructors, it does not confer any substantive rights on Balasubramanian. (Cf. *Ofsevit v. Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 771 [148 Cal.Rptr. 1, 582 P.2d 88] [terms of plaintiff's employment expressly gave him right to protection of university's grievance procedures].)

Moreover, the statute under which Balasubramanian is classified applies "[n]otwithstanding any other provision of law . . . ." (§ 87482.5.) Because

the legislative history of section 87482.5 shows it was intended to encourage rather than discourage the use of 60 percent FTE employees to serve as day-to-day substitutes, SDCC Procedures, procedure 4200.3 cannot apply to the contrary.

Balasubramanian asserts District is estopped from contradicting the interpretation of "day-to-day" contained in SDCC Procedures, procedure 4200.3. However, estoppel may be invoked against a government entity only in exceptional cases such as when justice and rights so require, but it may not be invoked where its application would tend to thwart public policy. (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 244 [5 Cal.Rptr.2d 782, 825 P.2d 767]; *Goodwill Industries v. County of L. A.* (1953) 117 Cal.App.2d 19, 26-27 [254 P.2d 877].)

Invoking the doctrine of estoppel here would tend to thwart the policy behind the enactment of section 87482.5. As we previously discussed, the purpose of that statute was to encourage the use of 60 percent FTE employees who would otherwise be excluded from serving as substitutes in an attempt to prevent them from exceeding the 60 percent FTE limit of their classification. Balasubramanian cannot impose an interpretation of section 87482.5 inconsistent with its intended purpose.

## Conclusion

"[F]or a writ of mandate to issue, two basic requirements are essential, namely, a clear, present and usually ministerial duty on the part of the defendant and a clear, present and beneficial right in plaintiff to performance of that duty." (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710]; see also *Pomona Police Officers' Assn. v. City of Pomona* (1997) 58 Cal.App.4th 578, 583-584 [68 Cal.Rptr.2d 205].) Balasubramanian, who was employed to teach under section 87482.5, does not meet the statutory prerequisites for contract status. Given the Legislature's intent to exempt day-to-day or short-term teaching assignments from counting toward eligibility for contract status, District had no duty to reclassify Balasubramanian. Thus, she is not entitled to a writ of mandate.

## II

Balasubramanian contends the court erred in granting summary judgment as to her breach of contract cause of action based on the doctrine of res judicata. She asserts the court erroneously found the primary right at issue in her federal civil rights action was the same as the primary right alleged in her state court contract claim—the loss of employment as an assistant professor of English.

# A

## Primary Right Theory

■ Res judicata operates as a bar to maintaining a second suit between the same parties or parties in privity with them on the same cause of action. (*Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327, 340 [29 Cal.Rptr.2d 314].) For purposes of res judicata, California applies the primary right theory to define cause of action as: (1) a primary right possessed by the plaintiff, (2) a corresponding duty imposed upon the defendant, and ' (3) a wrong done by the defendant which is a breach of such primary right and duty. (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593]; *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 285-286 [54 Cal.Rptr.2d 655].) Thus, a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954-955 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another ground in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944]; *Slater v. Blackwood, supra,* 15 Cal.3d at p. 795.)

"Where, as here, an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right. [Citation.]" (*Gamble v. General Foods Corp.* (1991) 229 Cal.App.3d 893, 898 [280 Cal.Rptr. 457].) When the doctrine of res judicata refutes all triable issues of fact suggested by the pleadings, summary judgment is proper. (*Ibid.*)

# B

## Breach of Contract Action Barred by Res Judicata

■ Balasubramanian's federal suit alleged employment discrimination based on national origin and gender when she was not selected for the assistant professor position. As part of her allegations, she claimed District's affirmative action representative was not present, in violation of SDCC Procedures, procedure 4200.1, when the selection committee interviewed her. Before trial, the court signed an order, approved as to form and content by counsel for both parties, setting forth the composition and duties of the selection committee. The order also noted the affirmative action representative, appointed in accordance with SDCC Procedures, procedure 4200.1, was absent when the selection committee interviewed Balasubramanian. After

trial, the jury unanimously found District did not discriminate against Balasubramanian.

In her state court action, Balasubramanian alleged District violated its procedures when it failed to include the affirmative action representative on the selection committee during her interview and then failed to select her for the position of assistant professor.

The determinative factor in applying the primary right theory was the harm Balasubramanian suffered. In both the federal and state actions, the harm she alleged was having been rejected for the position of assistant professor. Although her theory in federal court was discrimination and her theory in state court was breach of contract, both actions involved the primary right to be employed by District. (*Gamble v. General Foods Corp.*, *supra*, 229 Cal.App.3d at p. 901; *Takahashi v. Bd. of Trustees of Livingston* (9th Cir. 1986) 783 F.2d 848, 851.) Balasubramanian's reliance on *Agarwal v. Johnson, supra*, 25 Cal.3d 932, is misplaced. In that case, the plaintiff was terminated from employment and remained unemployed for 13 months. His former employee made unfavorable statements about him to prospective employers. (*Id.* at p. 943.) The plaintiff sued in state court, alleging defamation, infliction of emotional distress, and interference with business relationships. (*Id.* at p. 944.) He also filed a discrimination claim under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) (title VII) in federal court. Before final judgment in the state action, the federal court found the plaintiff had not met his burden of proving discrimination. The defendants then argued the federal judgment was a bar to the state action under principles of res judicata. (783 F.2d at p. 954.)

The Supreme Court disagreed, holding that although the federal action was based on the same underlying facts, res judicata did not apply. (*Agarwal v. Johnson, supra*, 25 Cal.3d at p. 954.) Using a primary rights analysis, the court reasoned the federal court action proceeded to trial on claims of discrimination under title VII and the district court's findings of fact were directed to the defendants' employment practices and the corresponding impact on racial minorities. Although the plaintiff's state court claims for defamation and intentional infliction of emotional distress arose in conjunction with the title VII claims, he was awarded damages in the state court for harm distinct from employment discrimination. (25 Cal.3d at pp. 954-955.)

Here, in contrast, Balasubramanian's claims in both federal and state court resulted from District's failure to hire her as assistant professor. Because the harm suffered, rather than the theory asserted, was the same in both actions,

res judicata operates to bar Balasubramanian's breach of contract cause of action. Summary judgment was proper.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.