Filed 8/4/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of FLORENCIA B. and JUAN J. GARCIA. | |
| | D070493 |
| FLORENCIA B. GARCIA, | |
| Respondent, | (Super. Ct. No. EFL17110) |
| v. | |
| JUAN J. GARCIA, | |
| Appellant. | |

APPEAL from orders of the Superior Court of Imperial County, Juan Ulloa, Judge.  Appeal from Support Order dismissed; Putative Spouse Order affirmed.

Scott B . Tepper for Appellant.

Marcus Family Law Center and Erin K. Tomlinson for Respondent.

In an earlier action in which Florencia B. Garcia petitioned to dissolve her marriage to Juan J. Garcia (Dissolution Action), the family court found that Florencia did not meet her burden of establishing a valid marriage and quashed service as to Juan and

dismissed the action.[1]  Florencia then filed the underlying action in which she petitions for nullity of marriage (Nullity Action).  In the Nullity Action, Juan appeals from two orders of the family court:  (1) an order in which the court found that Florencia is the spouse or putative spouse of Juan and ruled that she may proceed with the claims in her petition (Putative Spouse Order); and (2) an order in which the court directed Juan to pay Florencia spousal support arrears, ongoing spousal support and attorney fees and costs (Support Order).

In challenging the two orders, Juan raises a single legal issue for review on appeal: Under the doctrine of res judicata, does the judgment in the Dissolution Action bar the relief Florencia seeks in the Nullity Action?

Because the Dissolution Action and the Nullity Action involve different primary rights, we affirm the Support Order.  Because the Putative Spouse Order is not a final order, we dismiss Juan's appeal from that order.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dissolution Action*

In June 2014, Florencia filed the Dissolution Action.  She alleged that she and Juan married in October 1989 and separated in May 2014 (24 years seven months) and, on the basis of irreconcilable differences, petitioned for a dissolution of the marriage and

---

[1]    For convenience and clarity, we will refer to the parties by their first names. We intend no disrespect.

a determination of property rights, spousal support, and attorney fees and costs. At the same time, Florencia filed a request for an order that Juan pay spousal support and attorney fees and costs.

In response, Juan filed a request for an order to quash service of the summons and petition and to dismiss the Dissolution Action. In support of his request, Juan included evidence that he contended established that he and Florencia were never married. Florencia filed an opposition that included evidence that she contended established that she and Juan were married legally in Mexico.

Shortly before the hearing on the parties' requests for orders, Juan submitted additional evidence in support of his position that the parties were never legally married.

Following hearing, the family court found that there was no marriage and granted Juan's request for an order.[2] In November 2014, the court filed a written order quashing service and dismissing the Dissolution Action. Florencia did not appeal.

B. *The Nullity Action*

Approximately five months after dismissal of the Dissolution Action, Florencia filed the Nullity Action. Alleging a marriage to Juan in October 1989 and a separation from Juan in May 2014 (24 years seven months), Florencia petitioned for a judgment of nullity on the ground of fraud and a determination of property rights, spousal support and attorney fees and costs.

---

[2]     The court stated on the record the reasons for its ruling, but the parties have not provided a reporter's transcript of the proceedings.

In response, Juan filed a request for an order quashing service of the summons and petition. Relying on the October 2014 order quashing service of the summons and petition in, and dismissing, the Dissolution Action — and, in particular, the family court's finding that there was no marriage between Florencia and Juan — Juan argued that "since there was no marriage, there is nothing to annul." (Capitalization omitted.)

In opposition, Florencia argued that her claims in the Nullity Action were not barred by the preclusive effect of the judgment in the Dissolution Action because the claims in the Nullity Action involved a different primary right than the claims in the Dissolution Action.

In a minute order filed in July 2015, the family court denied Juan's request for an order to quash service of the summons and petition.

When he responded to the petition, Juan again asserted that the parties were never married, further contending that at all times Florencia knew both that they were never legally married and that she had no marital rights. Juan requested a finding that Florencia is not a putative spouse and an order that Florencia pay his attorney fees and costs.

Meanwhile, Florencia had filed a request for an order that Juan pay guideline temporary spousal support and attorney fees and costs.[3] She testified that Juan's motion to quash service of the summons and petition in the Dissolution Action was the first time

---

[3] At the time she filed the Nullity Action in April 2015, Florencia also filed a request for an order that Juan pay temporary spousal support and attorney fees and costs. Because of the pendency of Juan's motion to quash, the family court denied Florencia's initial request without prejudice.

4

that Juan had contended they were not legally married. From this evidence, Florencia countered that Juan had defrauded her and argued that she was a putative spouse entitled to property rights, spousal support and attorney fees and costs.

Juan filed a responsive declaration and other evidence in opposition to Florencia's request. For the most part, the evidence supported Juan's contention that he and Florencia were never married.

Florencia filed a reply declaration that contained evidence in support of her position that, in October 1989, she and Juan legally married.

In December 2015, the family court presided over a short cause trial to determine whether Florencia was a putative spouse[4] — with the understanding that other issues

---

[4] " 'Where a marriage is invalid due to some legal infirmity, an innocent party may be entitled to relief under the putative spouse doctrine.' " (*Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1172, italics omitted.) The doctrine is codified in Family Code section 2251 (further undesignated statutory references are to this code), which provides in part: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties, who believed in good faith that the marriage was valid, to have the status of a putative spouse. [¶] (2) If the division of property is in issue, divide . . . that property acquired during the union that would have been community property or quasi-community property if the union had not been void or voidable . . . ." (*Id.*, subd. (a).) " 'Putative spouse status may be based on the reasonable expectations of the parties to an alleged marriage entered into in good faith where the marriage is void or voidable . . . .' " (*Velez*, at pp. 1172-1173, italics omitted.) Since at least 1953, courts in California have required "that on dissolution of a putative marriage the property which the de facto spouses have acquired as a result of their joint efforts is to be treated as though it was the accumulation of a valid marriage." (*Union Bank & Trust Co. v. Gordon* (1953) 116 Cal.App.2d 681, 689.)

5

would be tried later.[5]  In relevant part, in the findings and order after hearing (previously identified as the Putative Spouse Order), the family court found that "Florencia is the spouse or putative spouse of Juan" and concluded that "she may pursue her claims as set forth in her petition(s), including support, award of property and obligations, attorney fees, and litigation costs."  (Some capitalization omitted.)  The court continued the hearing until mid-January 2016 for the purpose of considering the requests for spousal support and attorney fees and costs.[6]

At the continued hearing, the family court presided over a short cause trial on the issues of temporary spousal support and attorney fees and costs.  After considering the evidence presented and the argument of counsel, in the findings and order after hearing (previously identified as the Support Order), the court found that Florencia is entitled to

---

[5]    Florencia's trial brief also indicates that the issue of attorney fees was to be tried at the same time.  The parties have not provided a reporter's transcript of the trial, and as we explain in the text, *post*, the court ruled on only the putative spouse issue.

[6]    After the December 2015 hearing and before the continued hearing in January 2016, in the Nullity Action Florencia filed an amended petition to *dissolve* the parties' marriage.  As Juan correctly notes, the amended petition is, in all material respects, identical to the May 2014 petition by which Florencia initiated the Dissolution Action. To the extent Juan argues that the final judgment of dismissal of the Dissolution Action is a bar to the claims in the *amended* petition in the Nullity Action, we express no opinion. Juan presented no arguments to the family court based on the December 2015 amended petition for dissolution of marriage.  His May 2015 motion to quash service was directed to the original April 2015 petition for nullity of marriage, and the trial to determine whether Florencia was a putative spouse occurred prior to the filing of the amended petition.  Additionally, Juan's opposition to Florencia's request for spousal support and attorney fees and costs was based entirely on Juan's ability to pay.  In short, because none of the family court's rulings on appeal has anything to do with the December 2015 *amended* petition for dissolution of marriage in the Nullity Action, we have no occasion to consider the amended petition.

putative spouse benefits and ordered Juan to pay Florencia: a lump sum of $19,026.48 as spousal support arrears; temporary monthly spousal support of $1,072 from and after September 2015; and $20,000 in attorney fees and costs.

In one notice of appeal, Juan timely appealed from both the Putative Spouse Order and the Support Order.

## II.

## DISCUSSION

The pertinent ruling in the Putative Spouse Order is that Florencia is Juan's "spouse or putative spouse" and that she may proceed with the claims in her Nullity Petition. The pertinent ruling in the Support Order is that Juan must pay Florencia specified amounts of spousal support arrears, temporary monthly spousal support and attorney fees and costs. Juan argues that, in reviewing these rulings, we must decide whether the judgment of dismissal in the Dissolution Action bars Florencia's claims in this Nullity Action.

We review de novo a trial court's ruling on the application of the doctrine of res judicata or claim preclusion. (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 156.)

We affirm the Support Order. As we will explain, because the Dissolution Action and the Nullity Action involve different primary rights, the judgment of dismissal in the Dissolution Action is not a bar to the Nullity Action. First, however, we dismiss Juan's appeal from the Putative Support Order. As we will explain, because the Putative Spouse Order is not an appealable order, we lack jurisdiction.

7

A.      *Putative Spouse Order*

Substantively, the Putative Spouse Order provides in full as follows:  "Without determining at this time whether Florencia is actually married to Juan, the Court finds that Florencia is the spouse or putative spouse of Juan such that she may pursue her claims as set forth in her petition(s), including support, award of property and obligations, attorney fees, and litigation costs."[7]  (Some capitalization omitted.)  The family court continued the hearing to a date certain for the purpose of considering Florencia's requests for spousal support and attorney fees and costs.

Appellate courts have jurisdiction over a direct appeal, like the present one, only where there is an appealable order or judgment.  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  "The right to appeal is wholly statutory."  (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5, citing Code Civ. Proc., § 904.1; accord, *In re Marriage of Griffin* (1993) 15 Cal.App.4th 685, 687 (*Griffin*), citing § 904.1.)

Under Code of Civil Procedure section 904.1, subdivision (a)(1), subject to statutory exceptions inapplicable here, an appeal may be taken only from "a judgment" of

---

[7]     The court's minute order from the trial contains the following findings:  "The Court finds [Juan] less credible and finds that more likely than not [Florencia] for 24 years acted as though she believed she were married and that was not rebutted by credible testimony.  [¶]  The Court finds there is insufficient evidence to establish that in fact there was a marriage, but by preponderance of the evidence, it is established that [Florencia] had a good faith belief that she was married, and that she acted over the period of the time in question . . . as though she believed she was in fact married and not a mere technicality."

the superior court. The judgment contemplated by this statute is " ' "one final judgment in an action . . . which in effect ends the suit in the court in which it was entered, and finally determines the rights of the parties in relation to the matter in controversy." ' " (*Bank of America v. Superior Court* (1942) 20 Cal.2d 697, 701-702; see Code Civ. Proc., § 577 ["A judgment is the final determination of the rights of the parties in an action or proceeding."].) The intent of this statute is to codify the " '*final judgment rule*,' " part of our common law, by which " 'a[ppellate] review of intermediate rulings should await the final disposition of the case' " in order to avoid " 'piecemeal disposition and multiple appeals in a single action.' " (*Griffin*, *supra*, 15 Cal.App.4th at p. 687; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 96, pp. 158-159.) " ' "[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the right of the parties, the decree is interlocutory" ' " and thus "not appealable." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1217 (*Corona*), quoting *Olson v. Cory* (1983) 35 Cal.3d 390, 399 (*Olson*); accord, *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304 (*Sullivan*) [" 'A judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." ' "])[8]

---

[8]     There are exceptions to the final judgment rule. In family law proceedings, for example, one well-recognized nonstatutory exception includes appeals from collateral orders. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368-369 (*Skelley*).) Indeed, as we explain at part II.B., *post*, our jurisdiction to review the Support Order is pursuant to the collateral order doctrine.

With no explanation or discussion, Juan cites Code of Civil Procedure section 904.1, subdivision (a)(1), and states that the Putative Spouse Order is "deemed [a] final judgment[] because . . . [it] finally determine[s] the rights of the parties with respect to the matters adjudicated." We disagree. The Putative Spouse Order merely allows Florencia to "pursue her claims as set forth in her petition(s)" and continues the hearing until a date certain. Consistently, the court's minutes explain that the purpose of the continued hearing is to consider Florencia's requests for orders for spousal support and attorney fees and costs.

The Putative Spouse Order is a quintessential *interlocutory order*. Because it expressly directs " ' "[some]thing further in the nature of judicial action on the part of the court" ' " — namely, allowing the action to proceed and setting a hearing on spousal support and attorney fees and costs — the Putative Spouse Order is *not* " ' "a final determination of the rights of the parties." ' " (*Corona*, *supra*, 172 Cal.App.4th at p. 1217, quoting *Olson*, *supra*, 35 Cal.3d at p. 399.) Accordingly, the court lacks jurisdiction to review the Putative Spouse Order, and we dismiss Juan's appeal therefrom.

B. *Support Order*

In the Support Order, the family court ruled that Juan must pay Florencia spousal support arrears of $19,026.48, temporary monthly spousal support of $1,072, and attorney fees and costs of $20,000.

1. *The Support Order Is an Appealable Order*

Since the Support Order directs payment of spousal support arrears, temporary spousal support and attorney fees and costs in an ongoing action, the order is

10

interlocutory and, thus, not appealable under the final judgment rule. (See *Sullivan*, *supra*, 15 Cal.4th at p. 304; *Olson*, *supra*, 35 Cal.3d at p. 399; *Corona*, *supra*, 172 Cal.App.4th at p. 1217.)

However, " a necessary exception to the one final judgment rule" is the collateral order doctrine, pursuant to which an interlocutory order is appealable if it finally determines the rights of the parties in relation to that matter, leaving no further judicial acts to be done in regard thereto, and directs the payment of money or performance of an act. (*Skelley*, *supra*, 18 Cal.3d at p. 368.) In *Skelley*, for example, our Supreme Court held that a direct appeal lies from an order reducing temporary spousal support and denying attorney fees and costs. (*Ibid.*) As specifically applicable here, *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059 reaffirms that an order initially setting temporary spousal support is " ' "directly appealable as a final judgment independently of the main action." ' " (*Id.* at p. 1074, quoting *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 595.) This is not a new concept; even prior to the Family Code, orders granting or denying temporary *alimony* were also "directly appealable." (*Greene v. Superior Court* (1961) 55 Cal.2d 403, 405.)

Pursuant to these authorities, the Support Order is appealable under the collateral order doctrine, and we now turn to the merits of Juan's appeal from the Support Order.

2.      *Juan Has Not Established Reversible Error*

All intendments and presumptions are in favor of the Support Order, and Juan (as the appellant) has the burden of establishing prejudicial error. (*In re Marriage of Bowen* (2001) 91 Cal.App.4th 1291, 1301.)

11

Juan challenges Florencia's legal *entitlement* to an award of temporary spousal support and fees and costs, not the amounts awarded.  More specifically, he contends that, because the Dissolution Action and the Nullity Action "involve[] identical petitions, the same parties, and the same requests for relief" and because the dismissal of the Dissolution Action is final, application of the doctrine of res judicata to the order dismissing the Dissolution Action precludes the claims in the Nullity Action.  We disagree.  As we explain, since the Dissolution Action and the Nullity Action do not involve the same *primary right*, the finality of the dismissal of the Dissolution Action is not a bar to the prosecution of the Nullity Action.

a.    *Res Judicata and Primary Rights*

Res judicata deals with the preclusive effect of a final judgment on the merits and includes concepts of both claim preclusion and issue preclusion.  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*); *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 (*DKN Holdings*); see generally Code Civ. Proc., § 1908.)  Claim preclusion, sometimes referred to as res judicata, " 'prevents relitigation of the *same cause of action* in a second suit between the same parties or parties in privity with them.' " (*DKN Holdings*, at p. 824, italics added.)  Issue preclusion, which is also known as collateral estoppel, "prohibits the relitigation of *issues* argued and decided in a previous case, even if the second suit raises different causes of action" and can be asserted only against a party or one in privity with a party to the first lawsuit.  (*Ibid.*, italics added.)  Because res judicata potentially deals with both claim and issue

12

preclusion, to avoid confusion and consistent with recent Supreme Court practice (*ibid.*), we will use the terms "claim preclusion" and "issue preclusion."

Juan argues that, under the "the res judicata doctrine" and "principles of finality," the family court erred in awarding temporary spousal support and attorney fees and costs. Juan does not state specifically whether he is relying on claim preclusion (to bar the Nullity Action in its entirety) or on issue preclusion (to bar certain issues in the Nullity Action). However, because he contends that the finality of the dismissal of the Dissolution Action (in which Florencia was unable to establish a valid marriage) precludes the Nullity Action in its entirety (as opposed to a specified issue to be determined in the Nullity Action) and sought to have the family court dismiss the Nullity Action on that basis, Juan's argument is necessarily based on claim preclusion, not issue preclusion.

In theory, claim preclusion bars a second litigation because a responding party's potential responsibility for an intrusion on or entitlement to a single "primary right" gives rise only to a single cause of action. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682.) Because a primary right is a claimant's entitlement to be free from the particular injury suffered, where a claimant suffers different types of injury, there are distinct primary rights at issue. (*Id*. at p. 681.) Thus, where a single injury — and, thus, a single primary right — is involved, there is only one cause of action, no matter how many claims, legal theories or remedies the claimant asserts. (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797-798 (*Boeken*).) Indeed, when a court applies the doctrine of claim preclusion, "cause of action" has a specific meaning — namely, "the right to

13

obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." (*Id.* at p. 798; accord, *Mycogen*, *supra*, 28 Cal.4th at p. 904 [the primary right must "be distinguished from the *legal theory*" and "from the *remedy* sought"]; *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991 (*Balasubramanian*) ["a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff"].)

In the proceedings below, Juan argued that because the family court dismissed the Dissolution Action on the basis that Florencia did not establish that she and Juan were legally married, the finality of that dismissal precluded Florencia from pursuing the Nullity Action in which she sought a judgment of nullity of the marriage between the two of them. On appeal, Juan has refined the argument as follows: The doctrine of claim preclusion bars the Nullity Action, because the Dissolution Action and the Nullity Action "involve[] identical petitions, the same parties, and the same requests for relief" and the dismissal of the Dissolution Action is final and binding on Florencia and her claims in the Nullity Action. Accordingly, we must first determine the *primary right* in the Dissolution Action and the *primary right* in the Nullity Action.

b.    *Dissolution and Nullity Proceedings*

"Marriage is a personal relation arising out of a civil contract between two persons, to which the consent of the parties capable of making that contract is necessary[,]" though "[c]onsent alone does not constitute marriage." (§ 300, subd. (a).) A marriage may be legally dissolved in California, thereby restoring the spouses to the

14

status of "unmarried persons" (§ 2300), only by (a) the death of one of the parties, (b) a judgment of dissolution of marriage, or (c) a judgment of nullity of marriage.[9] (§ 310, subd. (c).)

A judgment of dissolution of marriage may be granted only on grounds of (a) irreconcilable differences that caused the irremediable breakdown of the marriage, or (b) permanent legal incapacity to make decisions. (§ 2310.) "Irreconcilable differences" are defined as "those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved." (§ 2311.) A dissolution of marriage based on this ground requires proof of "substantial marital problems which have so impaired the marriage relationship that the legitimate objects of matrimony have been destroyed and as to which there is no reasonable possibility of elimination, correction or resolution." (*In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 119.) The Family Code does not define "permanent legal incapacity," but a dissolution of marriage based on this ground requires "proof, including competent medical or psychiatric testimony, that the spouse was at the time the petition was filed, and remains, permanently lacking the legal capacity to make decisions." (§ 2312.) In sum, a judgment of dissolution of marriage is based on events that occur *after inception of a valid marriage.*

In contrast, a judgment of nullity of marriage determines that that, for reasons *existing at the time of the alleged creation of the marriage*, "no valid marriage ever

---

9       The death of a party is not at issue in this appeal.

existed."  (*Millar v. Millar* (1917) 175 Cal. 797, 807 (*Millar*); *In re Marriage of Seaton* (2011) 200 Cal.App.4th 800, 807 (*Seaton*).)  Whereas a proceeding to dissolve a marriage "is concerned with *marital status* as such," a proceeding to nullify a marriage "is concerned with *whether a contract was validly entered into at all.*"  (*In re Marriage of Goldberg* (1994) 22 Cal.App.4th 265, 268 (*Goldberg*).)  "[T]he legal reality is that a successful action for nullity of marriage results in a judicial determination that there never was a contract and hence there never was a marriage."  (*Ibid.*)

Even where a marriage complies with the basic statutory formalization procedures (e.g., § 306 [license, solemnization, authentication]), the marriage may be found invalid on the basis that it is *void* (e.g., §§ 2200 [incest], 2201 [bigamy, polygamy]) or *voidable* (e.g., § 2210, subds. (a) [party under the age of consent], (b) [prior existing marriage], (c) [unsound mind], (d) [consent obtained by fraud],[10] (e) [consent obtained by force], (f) [party physically incapable of entering into marriage]).  A *void* marriage is invalid from the onset regardless whether a judgment of nullity is obtained, because no marriage ever existed.  (*Seaton*, *supra*, 200 Cal.App.4th at pp. 806-807.)  In contrast, a *voidable* marriage is valid unless and until it is adjudicated a nullity. (*McDonald v. McDonald* (1936) 6 Cal.2d 457, 461.)

---

10    In the Nullity Action, Florencia alleges that her marriage to Juan is voidable based on fraud.  A marriage is "voidable and may be adjudged a nullity" if either party's consent was obtained by fraud, unless that party afterwards, with full knowledge of the facts constituting the fraud, freely cohabited with the other as husband or wife.  (§ 2210, subd. (d).)  The false representation or concealment constituting the fraud "must go to the *very essence* of the marital relation before it is sufficient for an annulment."  (*In re Marriage of Johnston* (1993) 18 Cal.App.4th 499, 502.)

16

c.   *Analysis*

Based on the foregoing legal authority, in order to determine whether the finality of the Dissolution Action is a bar to the Nullity Action, we now analyze whether the two actions involve the same primary right (in which event, application of the doctrine of claim preclusion bars the Nullity Action) or different primary rights (in which event, the trial court did not err, and the Nullity Action may proceed).

Very simply, "a judgment of dissolution terminates a valid marriage," whereas "a judgment of nullity declares that the marriage was void from its inception." (*Seaton*, *supra*, 200 Cal.App.4th at p. 806.) This is not a new concept. A century ago, our Supreme Court ruled that a judgment of nullity of marriage determines that "no valid marriage ever existed." (*Millar*, *supra*, 175 Cal. at p. 807.) Likewise, almost a half century ago, the court contrasted the two procedures: "A divorce in this state merely dissolves the existing marriage, leaving intact the marriage relationship between the time of the marriage ceremony and the entry of the final decree. An annulment, on the other hand, has been said to 'relate back' and erase the marriage and all its implications from the outset." (*Sefton v. Sefton* (1955) 45 Cal.2d 872, 874 (*Sefton*); see *ibid.* ["[A]n annulment decree has the effect of declaring a marriage void *ab initio*."].) Consistently, our colleagues in Division Two have described "the fundamental difference between the objective of an action to dissolve a marriage and one to annul it" as follows: Dissolution of a marriage "is concerned with *marital status* as such," in contrast with an annulment of a marriage, which "is concerned with *whether a contract was validly entered into at all.*" (*Goldberg*, *supra*, 22 Cal.App.4th at p. 268.)

17

In sum, dissolution of marriage and nullity of marriage are premised on inconsistent contradictory harms suffered:  Based on grounds that *arise after the marriage*, a dissolution action is brought to terminate a *valid marriage*; based on grounds that *arose prior to* the alleged marriage, a nullity action is brought to determine *whether a valid marriage ever existed*.  (*Millar*, *supra*, 175 Cal. at p. 807; *Seaton*, *supra*, 200 Cal.App.4th at pp. 806-807.)  Accordingly, we conclude that Florencia's Dissolution Action involved a different primary right than that involved in her Nullity Action.[11]  Thus, the doctrine of claim preclusion is inapplicable to bar the Nullity Action based on the dismissal of the Dissolution Action.

Juan contends otherwise on the basis that, because the Dissolution Action and the Nullity Action "involve[] identical petitions, the same parties, and the same requests for relief," the two actions involve the same primary right.  Factually and legally, Juan is mistaken.

---

[11]    While not determinative in our analysis of primary rights, we also note other significant distinctions between a dissolution cause of action and a nullity cause of action:  Whereas a dissolution action can be brought at any time, a nullity action based on a voidable interest is subject to a statute of limitations; whereas a dissolution action ordinarily requires equal division of property acquired during the marriage, a nullity action does not (though if a party to a nullity action qualifies as a putative spouse (see fn. 4, *ante*), then he or she may have quasi-marital property rights under section 2251 that are similar to community property rights); whereas a dissolution action is abated by the death of one of the parties at any time prior to entry of judgment (and the family court loses jurisdiction to decide any remaining issues), a nullity action survives the death of one of the parties (and may proceed to judgment before the family court following the substitution of the deceased party's personal representative).  (3 Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2017) ¶¶ 19:1.8 to 19:1.10, pp. 19-2 to 19-3.)

18

Factually, the two petitions are not identical. In the first petition, Florencia prayed for a judgment of dissolution of marriage, which, if successful, would have resulted in a change in marital status — i.e., the termination of a valid marriage.[12] (See *Sefton*, *supra*, 45 Cal.2d at p. 874; *Seaton*, *supra*, 200 Cal.App.4th at p. 806; *Goldberg*, *supra*, 22 Cal.App.4th at p. 268.) In the second petition, Florencia prays for a judgment of nullity of marriage, which, if successful, will declare that, because she and Juan never entered into a valid contract, their marriage was void from the start. (See *Sefton*, at p. 874; *Seaton*, at p. 806; *Goldberg*, at p. 268.)

Legally, Juan misapplies the primary rights doctrine. He contends that, because Florencia sought a determination of property rights, spousal support, and attorney fees and costs in the Dissolution Action and now requests the same relief in the Nullity Action, both actions involve the same primary rights. However, since the two actions involve distinct harms suffered — namely, irreconcilable differences occurring after the parties' marriage, as compared with fraud that occurred prior to their alleged attempt to marry — they involve different *primary rights*, regardless of the similarities of the *remedies* requested in each of the actions — namely, determination of property rights, spousal support, and attorney fees and costs. (*Boeken*, *supra*, 48 Cal.4th at pp. 797-798; *Mycogen*, *supra*, 28 Cal.4th at p. 904; *Balasubramanian*, *supra*, 80 Cal.App.4th at p. 991; see pt. II.B.2.a., *ante*.)

---

[12]  To the extent Juan's argument is that the petition in the Dissolution Action and the *amended* petition in the Nullity Action are nearly identical, for the reasons explained in footnote 6, *ante*, we have not considered Juan's arguments.

19

Because the Dissolution Action and Nullity Action involve different primary rights, Juan did not meet his burden of establishing that the family court erred in allowing the Nullity Action to proceed.[13]

DISPOSITION

The appeal from the Putative Spouse Order is dismissed. The Support Order is affirmed. Florencia is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

---

[13] We express no opinion as to what issues the family court adjudicates or to what the outcome of those issues should be as the Nullity Action proceeds.